UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MEAGAN B.,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. 23-5794 MLP

ORDER

## I.  INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income ("SSI").[1] Plaintiff contends the administrative law judge ("ALJ") erred by misevaluating the medical evidence, Plaintiff's testimony, and lay evidence. (Dkt. # 13.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for an award of benefits under sentence four of 42 U.S.C. § 405(g).

## II.  BACKGROUND

Plaintiff was born in 2003, has a limited education, and has no past relevant work. AR at 748, 760. In February 2017, Plaintiff applied for benefits, alleging disability as of March 2015.

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

1  AR at 17. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff

2  requested a hearing. *Id.* at 38-81. After ALJ Lee conducted a hearing, the ALJ issued a decision

3  finding Plaintiff not disabled. *Id.* at 14-37. Plaintiff appealed the final decision of the

4  Commissioner and in May 2021, this Court reversed the ALJ's decision and remanded the case

5  with instructions for the ALJ to: (1) reevaluate Dr. Wiseman's opinions, Plaintiff's testimony

6  about her pain symptoms, and the lay witness testimony; (2) reevaluate all relevant steps of the

7  child disability evaluation process; and (3) conduct further proceedings as necessary to

8  reevaluate the disability determination. *Id.* at 862.

9    Subsequently, after ALJ Johnson conducted a hearing in March 2023, the ALJ issued a

10  decision in May 2023 finding Plaintiff not disabled. AR at 740-70. Using the five-step disability

11  evaluation process,[2] the ALJ found, in pertinent part, Plaintiff had the severe impairments of

12  pain disorder, depression, hypersomnia, sleep disorder, and chronic fatigue. *Id.* at 748.

13  Furthermore, since attaining age 18 she has had the residual functional capacity ("RFC") to

14  perform a full range of work at all exertional levels that consists of simple tasks; that consists of

15  tasks that follow a set routine; and that is the same tasks over and over. *Id.* at 757. Plaintiff

16  appealed the final decision of the Commissioner to this Court. (Dkt. # 5.)

17          **III. LEGAL STANDARDS**

18    Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

19  security benefits when the ALJ's findings are based on legal error or not supported by substantial

20  evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a

21  general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the

22  ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

23

---

[2] 20 C.F.R. § 416.920.

(cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.    THREE-STEP PROCESS FOR EVALUATING CHILD DISABILITY

To qualify for SSI benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The regulations set forth a three-step process to determine whether a claimant satisfies the above criteria. 20 C.F.R. § 416.924(a). First, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." 20 C.F.R. § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the

impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments." 20 C.F.R. § 416.924(c)-(d).

If the ALJ finds the child's impairments or combination thereof does not meet or equal a listing, the ALJ must determine whether the impairments or combination thereof equals a listing. 20 C.F.R. § 416.926(a). The ALJ's functional equivalence assessment requires evaluation of the child's functioning in six "domains." These six domains, which are designed "to capture all of what a child can or cannot do," include: (1) Acquiring and using information; (2) Attending and completing tasks; (3) Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for self; and (6) Health and physical well-being. 20 C.F.R. § 416.926a(b)(1). An impairment functionally equals a listed impairment if the child's condition results in "marked" limitations in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). An impairment is a "marked limitation" if it "interferes seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

In evaluating functional equivalence, the Commissioner engages in a "whole child" analysis. Social Security Rule ("SSR") 09-1p, 2009 WL 396031 (effective February 17, 2009). An ALJ must consider how the child functions every day and in all settings by evaluating the activities a child does throughout the day at home, at school, and in the community. *Id*. at *2. To that end, the ALJ will consider which activities a child is able or unable to perform; which activities are limited or restricted; where the child has difficulty with activities – at home, in childcare, at school, or in the community; whether the child has difficulty independently

initiating, sustaining, or completing activities; the kind of help the child needs; and whether the child needs a structured or supportive setting. *Id*. at *2-3. After determining how the child functions in all settings, the domains are used to determine how and to what degree the child is limited in order to determine whether the child is "disabled" as defined in the Act. *Id*. at *7. No set formula dictates the considerations in each case. *Id*.

## V.    DISCUSSION

### A.    The ALJ Did Not Err at Step Two

At step two, the plaintiff bears the burden of establishing that she has a severe impairment by providing medical evidence. 20 C.F.R. § 416.912. An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work*." Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (citation omitted). The ALJ is required to consider the combined effect of all the plaintiff's impairments on her ability to function. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Thus, if the ALJ finds any severe impairments at step two, the ALJ must continue to consider all of the plaintiff's limitations, whether they are severe or not. SSR 96-8p, 1996 WL 374184 (effective July 2, 1996); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Nonetheless, if the ALJ fails to identify a severe impairment at step two but considers it later, the error at step two is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Plaintiff argues that the ALJ improperly failed to find the following were severe impairments: Postural Orthostatic Tachycardia Syndrome ("POTS"), headaches from POTS, stomach pain, severe behavior disorder, and anxiety. (Dkt. # 13 at 3.) With the exception of Plaintiff's severe behavior disorder, anxiety, and POTS, the ALJ expressly found those

impairments were not severe at step two because they were properly addressed by the severe impairment of pain disorder. AR at 748. As to Plaintiff's POTS, the ALJ explained that "the record lacks the objective testing that this diagnosis requires, as confirmed by the medical expert at the hearing." *Id.* Plaintiff's conclusory assertions to the contrary are unpersuasive. *See Putz v. Kijakazi*, 2022 WL 6943095 (9th Cir. Oct. 12, 2022) (citing *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007)). The Court will not "manufacture arguments where none is presented." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

Beyond referencing "abundant evidence which establishes that all of these impairments were severe," Plaintiff does not advance a single functional limitation that the ALJ failed to consider in the sequential analysis. (Dkt. # 13 at 3.) A diagnosis alone does not establish the severity of an impairment. *See Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). The ALJ considered all of Plaintiff's impairments at the subsequent steps of the sequential analysis and in his summary of the medical evidence. AR at 748-57. Accordingly, even if the ALJ erred at step two, that error would have been harmless. *Lewis*, 498 F.3d at 911.

Plaintiff further suggests ALJ Johnson erred by not accepting ALJ Lee's earlier findings that Plaintiff's POTS, headaches from POTS, stomach pain, severe behavior disorder, and anxiety, were severe impairments. (Dkt. # 13 at 3.) On remand, the Court instructed the ALJ to "conduct *all further proceedings necessary* to reevaluate the disability determination." AR at 862 (emphasis added). As such, the ALJ did not err by conducting step two analysis independent of the prior ALJ's findings.

**B.     The ALJ Erred in Evaluating the Medical Evidence**

Because Plaintiff applied for benefits before March 27, 2017, prior regulations apply to the ALJ's evaluation of medical opinion evidence. Under the applicable regulations, where not

contradicted by another doctor, a treating doctor's opinion may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *see* 20 C.F.R. § 404.1502(d).

### 1.  The ALJ Erred in Evaluating Testimony From Dr. Biles

In 2023, Dr. Biles testified as a medical expert that during the relevant period, Plaintiff had: (1) no limitations in acquiring and using information, completing tasks, or interacting and relating with others; (2) less than marked limitations in moving about, manipulating objects, or caring for herself; and (3) a marked limitation in health and physical well-being. AR at 793-94. Dr. Biles reviewed Plaintiff's medical records but did not examine or treat her and did not review her testimony from 2018.

Plaintiff argues that Dr. Biles was not qualified to provide medical testimony because she was not informed Dr. Biles had been subject to disciplinary action. (Dkt. # 13 at 6.) This argument is unavailing because the ALJ properly resolved Dr. Biles' qualifications before considering his opinion. AR at 753. Moreover, Plaintiff fails to cite any legal authority supporting her assertion that Dr. Biles was disqualified from providing medical testimony or to address any of the ALJ's reasons for finding him qualified. (Dkt. # 13 at 6-7.) The ALJ noted that Dr. Biles "testified that his license was current, which indicates it was reinstated." *Id.* at 753. Further, the ALJ explained that other medical professionals made the decision to reinstate his

license and a history of a prior disciplinary action was insufficient evidence to "limit his current ability to practice medicine." *Id.* The ALJ found "no indication he lacks the education or experience he asserted, which includes holding a Doctor of Medicine degree, decades of practice, and board certifications." *Id.* Thus, "[h]e is qualified to provide medical opinions." *Id.*

As to how persuasive the opinion was, the ALJ explained he gave Dr. Biles' opinion "great weight" because he answered questions and his opinion was consistent with the longitudinal record and medical evidence, supported by examination reports and treatment notes, and reflective of the effectiveness of Plaintiff's medication. AR at 753 (citing *id.* at 370, 411-13, 1160, 1173, 1175, 1196). The record reflects that Dr. Biles did not review any of Plaintiff's testimony from 2018 (*id.* at 778) and supported his testimony with a May 2017 consultative exam and an April 2017 treatment note. *Id.* at 794, 802. Dr. Biles determined that Plaintiff's concentration was not impaired because "there's no evidence that's an issue" and she displayed sustained concentration during the consultative exam. *Id.* at 793. Similarly, Dr. Biles explained Plaintiff's social impairments were "self-imposed" because she "was socializing. She was doing all these activities, and then she never went out again." *Id.* Dr. Biles further opined that the consultative exam did not indicate Plaintiff required assistance with self-care. *Id.* at 794. Nor was there "real documentation why she can't do anything." *Id.* Dr. Biles explained that he saw "things in the notes" – specifically, a treatment note indicating Plaintiff was cheerful and smiled during an appointment for headaches and abdominal pain – which were "inconsistent or incongruous" with the severity of limitations she described. *Id.*

Dr. Biles' assertion that Plaintiff's limitations were primarily "self-imposed," is mistaken. At the 2023 hearing, Dr. Biles stated, "we heard that she was socializing" and then she stopped, so "it's kind of, like, self-imposed." AR at 793. Yet Dr. Biles did not have access to, or

review, any of the hearing testimony from 2018. Nor does the record reflect that Plaintiff

testified during the 2023 hearing that she used to socialize but inexplicitly stopped. As such, it is

unclear where Dr. Biles "heard" that her limitations were self-imposed. Moreover, in contrast to

Dr. Biles' and the ALJ's findings, Plaintiff told the ALJ she had not socialized or hung out with

any friends since the alleged date of disability. *Id.* at 787-88. Additional evidence elsewhere in

the record further undermines the ALJ's reliance on Dr. Biles' opinion. In 2018, Plaintiff

testified that she used to hang out with people "but it fell apart when I physically didn't feel like

going to meet them" anymore. *Id.* at 47. She reported that she used to participate in a

homeschool group where she had friends, participated in band and drama classes, and saw people

every week, but that she had not been able to go for two years because of her issues. *Id.* at 60-61.

The evidence thus indicates that Plaintiff used to socialize and hang out with people but that she

has been unable to since the alleged date of disability. Dr. Biles' conclusory assertion that

Plaintiff's limitations were self-imposed – and the ALJ's reliance on it – is not supported by

substantial evidence.

The record thus indicates that Dr. Biles rejected Plaintiff's alleged limitations because he

did not see evidence which supported her claims, she was happy and smiled during a doctor's

visit, and her concentration and persistence were rated good during a consultative exam. Based

on this, the ALJ found Dr. Biles' opinions warranted controlling weight. Substantial evidence

does not support the ALJ's decision. *Beneke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (ALJ

erred by requiring objective evidence of fatigue caused, in part, by fibromyalgia; "sheer disbelief

is no substitute for substantial evidence.")). Further, appearing happy at a treatment visit is not

inconsistent with Plaintiff's allegations. *See Loretta S. v. Comm'r of Soc. Sec. Admin.*, 2020 WL

4559817, at *4 (D. Or. Aug. 7, 2020) (finding ALJ erred by relying, in part, on treatment notes

indicating "no apparent distress" to discount plaintiff's fatigue); *see also Sara O. v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4077781, at *2 (W.D. Wash. Sept. 8, 2021) (finding ALJ erred, in part, by relying on normal presentation, strength, and range of motion to discount plaintiff's fatigue).

## 2. *The ALJ Erred by Discounting Testimony from Dr. Wiseman*

In 2018, Dr. Wiseman provided testimony as a medical expert which indicated Plaintiff met the B criteria of the Listings and had functional limitations in the six domains, including marked to extreme limitations interacting with others. AR at 76-77. Dr. Wiseman reviewed plaintiff's medical records but did not examine or treat her. *Id.* at 73-74. The ALJ gave "little weight" to Dr. Wiseman's opinion because it was inconsistent with objective medical evidence and conflicted with other opinions. *Id.* at 754. The ALJ explained Dr. Wiseman failed to differentiate between limitations caused by Plaintiff's impairments and those that were self-imposed. *Id.* In contrast, the ALJ noted that Dr. Biles' opinion indicated Plaintiff's limitations in interacting with others were self-imposed and that her lifestyle and lack of activity contributed to her other functional impairments. *Id.* at 793-94. Plaintiff argues that the ALJ failed to provide substantial evidence to support his decision and erred by misevaluating the record. (Dkt. # 13 at 5.) For several reasons, the Court agrees.

The District Court remanded ALJ Lee's decision with instructions for the ALJ to reevaluate Dr. Wiseman's testimony. AR 851-54. Rather than engaging with Dr. Wiseman's testimony, the ALJ discounted all of it because it was inconsistent with Dr. Biles' opinions. *Id.* at 754. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his

conclusion." *Garrison v. Colvin,* 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). The ALJ therefore failed to provide a legitimate explanation for rejecting Dr. Wiseman's opinions on Plaintiff's ability to maintain concentration, persistence, and pace, and adapt and manage herself.

The ALJ also cited examples from the record which were inconsistent with Plaintiff's alleged limitations interacting with others, but erred because the evidence the ALJ relied on did not reasonably conflict with that opinion. AR at 754. The ALJ rejected Dr. Wiseman's opinion because Dr. Biles testified there was no medical explanation for Plaintiff to be limited in her ability to interact (*id.* at 793), but as explained *supra*, the ALJ erred by relying on Dr. Biles' opinion and rejecting Plaintiff's limitations on little more than disbelief. The ALJ further determined that Plaintiff did not have difficulty interacting with others because she was engaged during her consultative exam, described herself as happy, and had normal affect. *Id.* at 410-14, 1129-90. The ALJ's analysis is not supported by substantial evidence and repeats the same mistakes as before in mischaracterizing the consultative exam from 2017. The District Court previously found that the ALJ erred by relying on Plaintiff's interaction during the consultative exam and ability to present as happy and get along with her brother and mother because these were "so dissimilar from other social interactions and relationships, such as, for example, interactions with other children, that it is not a valid reason to reject Dr. Wiseman's opinion on social interaction." *Id.* at 854. The ALJ's cursory analysis in this case fails for the same reasons.

> 3.  *The ALJ Did Not Harmfully Err in Evaluating Dr. Thompson's Opinions*

In May 2017, Dr. Thompson evaluated Plaintiff and diagnosed her with "Major Depressive Disorder, Moderate." AR at 414. Dr. Thompson reported that Plaintiff had good reasoning ability, understanding, and sustained concentration and persistence. *Id.* at 415. Dr.

Thompson opined that Plaintiff's memory was impaired and that, although her delayed and intermediate memory were good, her working memory was poor. *Id.* Dr. Thompson noted Plaintiff's social interaction and interpersonal relationships were limited and that her "ability to adapt to routine changes in a typical school setting is likely to be impacted by reported depressed mood, medical issues, and chronic pain." *Id.*

The ALJ gave Dr. Thompson's opinion "some weight." AR at 753. The ALJ explained the opinion was not probative of Plaintiff's functional domains but was consistent with his functional limitation findings. *Id.* at 753-54. An ALJ must give clear and convincing reasons supported by substantial evidence to reject a treating doctor's uncontradicted opinions, and specific and legitimate reasons supported by substantial evidence to reject a treating doctor's contradicted opinions. *See Lester*, 81 F.3d at 830.

Plaintiff has failed to show the ALJ erred in evaluating Dr. Thompson's opinions. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)) (holding that the party challenging an administrative decision bears the burden of proving harmful error). Plaintiff's only argument is that "Dr. Thompson's clinical findings do provide additional objective evidentiary support for Dr. Wiseman's opinion that [Plaintiff] meets or equals Listings 112.04 and/or 112.07." (Dkt. # 13 at 6.) Plaintiff does not explain which findings support her assessment, nor does she articulate an explicit error by the ALJ. Moreover, Plaintiff's argument was previously rejected by the District Court. AR at 856. As before, Plaintiff's bare assertion that Dr. Thompson's clinical findings support Dr. Wiseman's opinions does not establish that the ALJ erred in evaluating Dr. Thompson's opinions.

4. *The ALJ Did Not Harmfully Err in Evaluating Other Medical Evidence*

Plaintiff's opening brief spends seven pages describing portions of the longitudinal record, before concluding that "[a]ll of the above evidence fully supports Dr. Wiseman's opinion that [Plaintiff] functionally equals a Listing, and it fully undermines the ALJ's entire decision." (Dkt. # 13 at 7-13.) This does not meet Plaintiff's burden to demonstrate error because it does not constitute an argument. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). The Ninth Circuit has itself recognized that a plaintiff waived "any argument based on [clinical] findings" where the plaintiff "simply list[ed] numerous clinical findings, unaccompanied by argument." *Putz v. Kijakazi*, 2022 WL 6943095, at *2 (9th Cir. Oct. 12, 2022). That is because "[b]are assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw fall far short of the requirement that counsel present 'appellant's contentions and the reasons for them.'" *Sekiya*, 508 F.3d at 1200; *see also Molina*, 674 F.3d at 1111 (holding that the burden of showing harmful error falls on the party attacking an agency's determination) (citing *Shinseki*, 556 U.S. at 409).

While the Court declines to manufacture Plaintiff's argument, it nonetheless notes that the Plaintiff broadly raised two general challenges of the ALJ's decision. First, Plaintiff generally contends the clinical evidence demonstrates that her treatment was ineffective and she was too overwhelmed to comply with providers' recommendations. (Dkt. # 13 at 7, 10-11.) This argument fails because Plaintiff does not connect these findings to any specific error the ALJ made. Second, Plaintiff argues that the ALJ failed to consider Dr. Windsor's notes regarding her severe functional disability. (*Id.* at 9.) Dr. Windsor's notes list Plaintiff's diagnoses and mention her referral for sleep medicine, physical therapy, and medication for headaches, as well as being a good candidate for acupuncture. AR at 468. Yet the notes do not discuss any functional

1    limitations. An ALJ is only required to evaluate medical opinions and the two treatment notes

2    Plaintiff cited do not fall into that category. 20 C.F.R. § 404.1527(a)(1); s*ee also Treichler v.*

3    *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("[T]he ALJ's analysis need

4    not be extensive."). The Court thus finds no error in the ALJ's evaluation of this matter.

5                    *5.   The ALJ Did Not Harmfully Err in Evaluating Consultants' Opinions*

6            The ALJ gave great weight to the opinions provided by the state agency consultants and

7    explained they were consistent with Dr. Biles' opinion, which was "entitled to weight." AR at

8    755. Plaintiff argues the ALJ erred because he did not explain why he disagreed with ALJ Lee's

9    findings, which gave "limited weight" to these opinions. (Dkt. # 13 at 13.) As discussed *supra*,

10   however, the ALJ was instructed to conduct all proceedings necessary to evaluate Plaintiff's

11   application. In turn, the ALJ was not required to accept ALJ Lee's earlier decision limiting the

12   persuasiveness of the agency consultant opinions. Moreover, the record reflects that ALJ Lee

13   gave these opinions little weight because he found that Plaintiff was less limited than the agency

14   consultants opined. AR at 24. Here, the ALJ found that Plaintiff had greater limitations than ALJ

15   Lee assessed. Plaintiff's argument thus fails to establish harmful error.

16           Next, Plaintiff argues that the ALJ erred by giving these opinions more weight than Dr.

17   Wiseman's opinion because Dr. Wiseman reviewed the record in 2018, whereas the state

18   consultants reviewed it in 2017. (Dkt. # 13 at 8.) Regulations applicable to this case require that

19   an ALJ evaluate the degree to which a non-examining source considers the evidence, not that a

20   failure to consider all evidence requires the source to be discounted. *See* 20 C.F.R.

21   § 416.927(c)(3). Plaintiff also suggests the consultants' opinions are inconsistent with Dr.

22   Wiseman's opinion, the longitudinal record, her testimony, and the lay evidence. (Dkt. # 13 at

23   14.) But she does not articulate any specific examples which demonstrate harmful error by the

ALJ. Nor does she address whether the ALJ's decision is supported by substantial evidence and free of legal error. In this case, the ALJ had the opportunity to consider all of the evidence, and there is no indication that he erred in doing so or by giving the consultants' opinions great weight.

**C.      The ALJ Erred in Evaluating Plaintiff's Testimony**

In 2018, Plaintiff, a young teenager at the time, testified about her constant fatigue, head pain, and stomach pain, which she said caused functional limitations. AR at 52. She spoke of how her fatigue disrupted her sleep patterns, making it difficult for her to fall asleep and wake up. *Id.* at 59. She also mentioned that her headaches resulted in a "dull hurting" in her stomach, leading to nausea and affecting her eating habits. *Id.* at 58. These headaches, she said, worsened her memory and concentration, making it hard for her to complete chores and complete schoolwork. *Id.* at 59-61. One chore she mentioned was walking her cats, who would explore a field and forest behind her house while leashed. *Id.* at 48, 54-55. She explained she was meant to do this once a day as part of her prescribed exercise but she only did it "sometimes." *Id.*

Fast forward to 2023, Plaintiff, now a young adult, testified that her primary symptoms had largely remained the same. AR at 779-92. She reported struggling with memory and clarity of thought, and said her concentration was impaired. *Id.* at 785. She mentioned being homeschooled but was uncertain if she had completed any education beyond the eighth grade. *Id.* at 788. She also shared that her fatigue, which worsened when she engaged in activities, had not improved with treatment. *Id.* at 780. This fatigue led to dizziness, lightheadedness, and a lack of energy to socialize with friends. *Id.* Despite her fatigue not improving between 2018 and 2023, she noted that she slept more in the past than in 2023. *Id.* at 786. In response to the ALJ's questions about her previous testimony regarding walking her cats, Plaintiff explained that she

attempted to walk at least one cat once a week, but her fatigue often prevented her from doing so consistently. *Id.* at 790. She also mentioned that she had not walked a cat for at least two weeks prior to the hearing and that her activity level had "always" been this way. *Id.*

The ALJ found that inconsistencies in the record undermined the persuasiveness of the severity of limitations Plaintiff alleged. AR at 751-53, 756-58. Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons to discount a plaintiff's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (the ALJ must identify "*which* testimony [the ALJ] found not credible" and explain "*which* evidence contradicted that testimony.").

In 2018, she claimed to walk "up to two cats, once per day," but by 2023, she reported walking her cat only once a week. AR at 751. Despite her alleged limitations, she admitted to a consultative examiner that she occasionally used a trampoline and enjoyed swimming. *Id.* at 413. The ALJ noted that her 2023 claim of sleeping 14-15 hours a night (*id.* at 786) did not align with her reports to medical providers in 2019, which suggested she slept 11 hours per night. *Id.* at 1100. The ALJ found that benign mental status exam findings and clinical evidence of unimpeded concentration, apart from some memory testing limitations, further contradicted her testimony. *Id.* at 410-15. The ALJ further observed that the Plaintiff's depression symptoms were well managed and that she slept very well. *Id.* The ALJ also found that her physical exam findings were unremarkable. *Id.* at 526-27, 676-77, 1091-95.

The ALJ reasoned that medication and treatment alleviated Plaintiff's pain issues and that office notes generally documented normal observations. AR at 1143, 1155-56, 1160-62, 1168, 1173, 1175, 1177-78, 1180, 1183. Contrary to her testimony about schooling issues, the ALJ highlighted that her school performance was fairly good. *Id.* at 755. Furthermore, her claim of

possibly completing an eighth-grade education conflicted with her reports elsewhere in the record of completing the tenth grade. *Id.* at 1135. The ALJ explained that Plaintiff's alleged social issues were more likely due to her homeschool isolation rather than any symptoms. *Id.* at 751. The ALJ also found that she was homeschooled because of her brother's autism rather than her limitations. *Id.*

Plaintiff argues that the ALJ failed to properly evaluate the objective medical evidence and that it was "fundamentally unfair" for the ALJ to repeatedly compare reports from 2017 with testimony from between one and six years later and reject it based on minor discrepancies therein. (Dkt. # 13 at 14-15.) She suggests this was particularly unreasonable "in light of the evidence that she experiences brain fog" and argues that the ALJ broadly mischaracterized her testimony. (*Id.*) In response, the Commissioner asserts that the ALJ "reasonably found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence." (Dkt. # 17 at 8.) In this case, the ALJ's evaluation of Plaintiff's testimony was flawed because substantial evidence does not support his explanations.

The ALJ failed to provide a clear connection between Plaintiff's testimony and the medical evidence. As noted *supra*, appearing in "no acute or apparent distress" is not inconsistent with Plaintiff's allegations of waxing-and-waning symptoms. A few general findings indicating a positive response to treatment does not necessarily correlate to her functional capacity. *Garrison*, 759 F.3d at 1017 (doing well for purposes of treatment program not related to ability to work); *see also Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) (responding well to treatment doesn't correlate with ability to enter the workforce).

The ALJ's reasoning relied heavily on Plaintiff's ability to perform certain activities, such as using a trampoline and swimming, without considering the full context of her symptoms

and their impact on her daily life. Plaintiff testified that she occasionally walks her cats as part of her prescribed exercises but explained that – other than spending time with her mother and brother – she did not engage in any activities or socialize with any people. An ALJ may not reject evidence based on an inaccurate portrayal of the record. *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's decision unsupported by substantial evidence where "paraphrasing of record material is not entirely accurate regarding the content or tone of the record."). It is true that the ALJ cited some normal findings, but such observations must be "read in context of the overall diagnostic picture" the provider draws. *Ghanim*, 763 F.3d at 1162. The fact that a person has "occasional symptom-free periods" is not inconsistent with finding that the person is too disabled to function in the workplace. *Lester*, 81 F.3d at 833. In the same way, it was unreasonable to discount Plaintiff's concentration and memory testimony based on a single exam where she "was able to perform a simple three-step command successfully after one repetition" and spell the word "world" backward and forward once. AR at 413. The ALJ also did not adequately explain why Plaintiff's homeschooling was due to her brother's autism or how that would negate her own limitations.

### D.    The ALJ Erred in Evaluating Lay Witness Testimony

In October 2018, Plaintiff's mother, C.B., submitted a statement describing the learning problems Plaintiff was having at the time. AR 307-13. In turn, C.B. testified at both of Plaintiff's hearings and described her observations of Plaintiff's activities and functional limitations. *Id.* at 63-73, 806-10. The ALJ gave "little weight" to C.B.'s opinions and explained that her testimony was inconsistent with Dr. Thompson's opinion and the longitudinal record. AR at 755, 760. In determining disability, "an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r,*

1   *Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ must "give reasons germane to

2   each witness" before he can reject such lay witness evidence." *Molina*, 674 F.3d 1104, 1111 (9th

3   Cir. 2012) (internal citations and quotation marks omitted). "Further, the reasons 'germane to

4   each witness' must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

5   Nonetheless, where "lay witness testimony does not describe any limitations not already described

6   by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply

7   equally well to the lay witness testimony" any error by the ALJ is harmless. *Molina*, 674 F.3d at

8   1117, 1122.

9           Plaintiff argues that the ALJ failed to provide germane reasons supported by substantial

10  evidence for rejecting C.B.'s testimony. (Dkt. # 13 at 16-17.) The Commissioner contends that

11  the ALJ properly discounted C.B.'s testimony as inconsistent with the record and more extreme

12  than the evidence could support. (Dkt. # 17 at 12-13.) Alternatively, the Commissioner argues

13  that any error the ALJ committed was harmless because the ALJ gave valid reasons for rejecting

14  Plaintiff's similar testimony. (*Id.*) As with Plaintiff's testimony, however, the ALJ's findings are

15  not supported by substantial evidence. As a preliminary matter, the Court notes this error is

16  particularly harmful in light of the ALJ's failure to reasonably apply the "whole child" analysis

17  in evaluating Plaintiff's application for the period of time where she was a minor. C.B.'s

18  testimony is substantive and engages closely with articulating Plaintiff's primary impairments of

19  fatigue and memory issues. These limitations, as Dr. Wiseman testified, are "all syndromes"

20  which are "usually in the behavioral area which is non-objective." AR at 75. As Plaintiff's

21  mother, C.B. spent significant time with her, especially because Plaintiff was homeschooled –

22  under C.B's supervision – during the relevant period. Accordingly, the ALJ should have afforded

23  C.B.'s testimony more weight in evaluating Plaintiff as a "whole child."

1        In 2018, C.B. provided a statement which described Plaintiff's issues with learning at that

2 time. AR at 307-13. She explained Plaintiff did "about 3 to 4 hours of school per week" and

3 indicated she had an unusual degree of absenteeism. *Id.* at 307. She had "an obvious problem"

4 reading and comprehending written material and learning new material; she had "a serious

5 problem" recalling and applying previously learned material; and she had "a very serious

6 problem" comprehending and doing math problems and applying problem solving skills in class

7 discussions. *Id.* at 308. C.B. wrote that Plaintiff had problems focusing and "hasn't made much

8 progress due to absenteeism." *Id.* She noted Plaintiff's absenteeism meant she did not have

9 friends or participate in any activities. *Id.* at 310. Nor could she "maintain pace or endurance in

10 physical tasks without dizziness and/or nausea." *Id.* at 311. Last, C.B. wrote that Plaintiff "has

11 withdrawn from all aspects of student life due to pain and fatigue." *Id.* at 313. Also in 2018, C.B.

12 testified at the hearing that Plaintiff had significant learning difficulties and did not go outside or

13 socialize with anyone but noted that she took care of the litter and her personal hygiene. *Id.* at

14 63-73. In turn, C.B. testified at the hearing in 2023 and explained that Plaintiff's fatigue and

15 memory continued to cause her significant issues. *Id.* at 806-10.

16        The ALJ discounted C.B.'s testimony about Plaintiff's difficulty focusing because it was

17 inconsistent with Dr. Thompson's medical testing; but Dr. Thompson indicated that Plaintiff had

18 memory issues, acted much younger than her actual age, and was immature and naïve with a

19 poor understanding of her symptoms. AR at 755 (citing *id.* at 414). Similarly, the ALJ found that

20 medical treatment notes did not support Plaintiff's alleged limitations interacting with others

21 because she did not have issues interacting with medical professionals. *Id.* at 755. The records

22 the ALJ relied on, which reflect that she was too fatigued to attend her appointment in person (*id.*

23 at 1173) and interacted appropriately with treatment providers (*id.* at 1160, 1196), do not support

the ALJ's conclusions. The fact that she could occasionally interact with others during medical appointments does not mean she would not struggle in social and work environments. The ALJ also referred to Dr. Biles' 2023 opinion, which opined that Dr. Thompson found Plaintiff's school performance was fairly good in 2017. *Id.* at 755. As explained *supra*, however, the ALJ erred in evaluating Dr. Biles' opinion. Furthermore, Dr. Thompson's note references Plaintiff's self-report that she was "fairly good" in her homeschool performance but does not itself state that Plaintiff performed well academically. *Id.* at 415.

The ALJ further discounted C.B.'s most recent testimony and found it was "inconsistent with the medical record" and with Plaintiff's "demonstrated recall and articulation at the most recent hearing." AR at 760. The medical records the ALJ referred to are the same treatment notes the ALJ relied on to discount Plaintiff's testimony. *Compare id.* at 751-52, *with id.* at 759-60. During the most recent hearing, Plaintiff could not remember the grade level she had achieved (*id.* at 788); she could not remember whether she took the GED test (*id.*); and she could not remember testifying previously about walking her cats. *Id.* at 790. Plaintiff's answers to questions were perfunctory and she frequently responded with only "yes" or "no" answers. *Id.* at 779-92. Based on this, the ALJ found C.B.'s testimony about Plaintiff's issues with school assignments inconsistent with her appearance at the hearing. This is an unreasonable finding. In sum, the ALJ's interpretation of the record was not entirely accurate, and the reasoning the ALJ provided lacked substantial evidence to support it. The ALJ thus erred in dismissing C.B.'s testimony.

### E.      The ALJ's Step-Five Evaluation

An ALJ applies a five-step disability evaluation for the period after a claimant reaches age 18. 20 C.F.R. § 416.920. At step five, the burden shifts to the Commissioner to prove that,

based on the plaintiff's residual functional capacity, age, education, and past work experience, she can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987). If she can, she is not disabled; if she cannot, she is disabled. *Id.* At issue is whether Plaintiff had the RFC to perform other work. Here, the ALJ found that, since attaining age 18, Plaintiff had the RFC "to perform a full range of work at all exertional levels that consists of simple tasks; that consists of tasks that follow a set routine; and that is the same tasks over and over." AR at 757. Moreover, the ALJ found that, considering Plaintiff's age, education, work experience, and intelligence tests, she could perform a significant number of sedentary jobs in the national economy. Therefore, the ALJ found her not disabled and not entitled to child's disability insurance benefits.

In support of her application for benefits, Plaintiff offered extensive testimony, including her own and her family members', regarding her severe fatigue, issues with concentration and memory, and pain and the effect they had on her ability to function. Dr. Wiseman testified that, as a result of these symptoms, Plaintiff met the B criteria of the Listings and had functional limitations in the six domains, including marked to extreme limitations interacting with others. AR at 76-77. In the same way, Dr. Thompson opined that Plaintiff's memory was impaired and she would struggle to adapt to changing situations or get along with people. *Id.* at 410-15. These opinions are supported by the rest of the record. For example, Plaintiff and her mother testified that she slept excessively and fatigued easily even when doing such sedentary activities as working on her homeschool online. *See generally id.* at 48-73, 307-13, 779-810. Moreover, her school history and medical records demonstrated that, as a result of her fatigue and issues with memory, she was unable to complete an educational level higher than the tenth grade, routinely missed appointments, and stayed home because of her fatigue. *Id.* at 788, 307-13, 1173. The vocational expert testified Plaintiff could not have maintained even an unskilled sedentary job

1    with those impairments and degree of absenteeism. *Id.* at 813-14 (A person would be unable to

2    fulfill their work obligations if more than one day a month was missed or if productivity fell

3    short by more than twenty percent).

4           There is no contradictory evidence to support the ALJ's finding that Plaintiff was not

5    disabled and could have performed a full-time sedentary job during the years in question.

6    Although the ALJ appears to have relied on the testimony of Dr. Biles, the opinion of Dr.

7    Thompson, the state agency consultants' opinions, and the vocational expert testimony, to

8    support his findings, substantial evidence does not support his conclusions. Considering the

9    record as a whole, including the evidence the ALJ erroneously discredited, the Court concludes

10   that the ALJ's finding that Plaintiff could have performed sedentary work is not supported by

11   substantial evidence.

12          **F.      Remand for Award of Benefits**

13          Plaintiff argues the Court should remand for an award of benefits because the record is

14   complete and the improperly discounted opinions support a finding of disability. The

15   Commissioner contends normal exam findings, Plaintiff's activities and treatment history, and

16   the opinions of various examining and non-examining medical providers create conflicts in the

17   record that must be addressed by the ALJ. As the foregoing discussion explains, all of the ALJ's

18   reasons for rejecting Plaintiff's testimony, lay witness evidence, and Dr. Wiseman's opinions

19   were legally or factually erroneous. The ALJ did not provide any substantial evidence to support

20   a finding that Plaintiff's symptoms were not as severe as she alleged. This error is particularly

21   harmful in light of the ALJ's failure to reasonably apply the "whole child" analysis in evaluating

22   Plaintiff's application for the period of time where she was a minor.

23

Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits: (1) has the record been fully developed such that further administrative proceedings would serve no useful purpose; (2) has the ALJ failed to provide legally sufficient reasons for rejecting evidence from plaintiff's testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, would the ALJ be required to find plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020.

Although the Commissioner argues further proceedings would serve the purpose of allowing the ALJ to resolve conflicts between Dr. Wiseman's testimony and the less limited opinions of Dr. Thompson and the agency consultants (dkt. # 17 at 5), precedent and the objectives of the credit-as-true rule preclude the argument that a remand for the purposes of allowing the ALJ to have a second chance qualifies as a remand for "useful purpose" under the first part of credit-as-true analysis. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *see also Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). The Commissioner simply repeats the arguments that have been made, asserting evidence favorable to Plaintiff should not be given much weight and testimonial evidence should not be accepted. At no point does the Commissioner advance an argument that the ALJ overlooked anything in the record and explain how that evidence undercuts Plaintiff's claim to be disabled. Dr. Thompson reported that Plaintiff's memory was inconsistent and she experienced fatigue. AR at 414-15. Similarly, the agency consultants found that Plaintiff's memory was decreased and inconsistent (*id.* at 117, 125); she experienced chronic

1   pain, headaches, and fatigue (*id.* at 118); and she was unable to sustain activities. *Id.* at 130.

2   These are consistent with the testimonial evidence and Dr. Wiseman's opinion. Allowing remand

3   for further proceedings because the ALJ failed to provide any legally sufficient reasons for

4   discounting evidence – after more than eight years and two hearings – would contribute to waste

5   and disincentivize the ALJ's obligation. This is the essence of the "heads we win; tails, let's play

6   again" adjudication *Benecke* cautioned against. 379 F.3d at 595.

7          The Court concludes that each of the credit-as-true factors is satisfied and thus remand

8   for the calculation and award of benefits is warranted. The ALJ's reasons for discrediting

9   Plaintiff's testimony, Dr. Wiseman's opinions, and the lay testimony were legally insufficient.

10  There are no outstanding issues to preclude the Court from making a disability determination on

11  the merits. The record is fully developed and, considering the evidence that the ALJ improperly

12  discredited, a finding of disability is clearly required. *See Trevizo v. Berryhill*, 871 F.3d 664, 677

13  (9th Cir. 2017). Plaintiff has already waited over eight years for her disability determination, and

14  additional proceedings would only delay her receipt of benefits.

15         In addition, the "exceptional facts" of this case, *Terry v. Sullivan*, 903 F.2d 1273, 1280

16  (9th Cir. 1990), strongly favor remand for immediate payment of benefits. After the

17  Commissioner rejected her application, the District Court remanded it with instructions for the

18  ALJ to "reevaluate Dr. Wiseman's opinions, plaintiff's testimony regarding her pain symptoms,

19  and plaintiff's mother's testimony." AR at 862. On remand, rather than engaging substantively

20  with the aforementioned issues, the ALJ discounted Dr. Wiseman's opinions based on Dr. Biles'

21  testimony – which the ALJ erred in evaluating – and repeated the same analysis the prior ALJ

22  made. In the same way, the ALJ dismissed Plaintiff's testimony and her mother's testimony.

23  "[F]urther delays at this point would be unduly burdensome." *Terry*, 903 F.2d at 1280; *see also*

1   *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989) (crediting treating physician's

2   uncontroverted testimony and awarding benefits); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th

3   Cir. 1996) (crediting subjective fatigue testimony and awarding benefits despite sparse medical

4   records corroborating claims of pain and fatigue); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th

5   Cir. 1989) (crediting subjective symptom testimony and awarding benefits); *Varney v. Secretary*

6   *of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir.1988) (same). Taking everything into

7   account, Plaintiff satisfies all three conditions of the credit-as-true rule and a careful review of

8   the record discloses no reasons to seriously doubt that she is, in fact, disabled. Because the

9   evidence establishes Plaintiff would be unable to maintain employment while managing her

10  fatigue and memory issues, remand for further proceedings serves no useful purpose.

### VI.    CONCLUSION

12          For the foregoing reasons, the Commissioner's final decision is REVERSED and this

13  case is REMANDED for an award of benefits beginning on the onset date of disability on

14  February 24, 2017, under sentence four of 42 U.S.C. § 405(g).

15          Dated this 15th day of April, 2024.

16

17  _____
    MICHELLE L. PETERSON
18  United States Magistrate Judge

19

20

21

22

23